1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MANOJ KUMAR,<br>BHAVIKABEN M. BRAHMBHATT, &<br>BHAVIKA'S HOSPITALITY, INC.,<br><br>Defendants. | Case No. 15-CV-05780-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 23 |

Plaintiff United States of America ("Plaintiff") brings this suit on behalf of its agency, the United States Small Business Administration ("SBA"), to collect on a small business loan made to Bhavika Properties, LLC ("Borrower") from the loan's guarantors, Manoj Kumar ("Kumar"), Bhavikaben M. Brahmbhatt ("Brahmbhatt"), and Bhavika's Hospitality, Inc. ("Bhavika's Hospitality").  Hereafter, the Court refers to Kumar, Brahmbhatt, and Bhavika's Hospitality collectively as "Defendants."  Before the Court is Plaintiff's Motion for Summary Judgment.  ECF No. 23.  Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment.

1

United States District Court
Northern District of California

# I.     BACKGROUND

## A. Factual Background

The San Fernando Valley Small Business Development Corporation ("San Fernando") made a loan to Borrower in the original principal amount of $1,543,000, as evidenced by a promissory note executed on September 16, 2009.  ECF No. 24, Declaration of Gary Wamhof ("Whamhof Decl.") Ex. A ("Note").  The loan was made pursuant to Section 504 of the Small Business Act, 15 U.S.C. § 636 *et seq.* for the purpose of purchasing the commercial real property—a hotel—located at 4278 W. Ashlan Ave., Fresno, CA (the "Property").  Borrower provided San Fernando a security interest in the Property as part of the loan agreement.  ECF No. 34-2.

Defendants Kumar and Brahmbhatt were members of Borrower, a limited liability corporation, at the time the promissory note was executed.  ECF No. 25-1 at 10; ECF No. 25-2 at 9.  Kumar and Brahmbhatt signed the Note on behalf of Borrower.  Whamhof Decl. Ex. A.

On September 16, 2009, Kumar and Brahmbhatt both personally signed an "Unconditional Guarantee" of the Note, in which Kumar and Brahmbhatt agreed to the following:

> Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note.  This Guarantee remains in effect until the Note is paid in full.  Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor.  Lender is not required to seek payment from any other source before demanding payment from Guarantor.

ECF No. 24, Whamhof Decl. Ex. B ("Unconditional Guarantees") at 6.  Also on September 16, 2009, Bhavika's Hospitality executed an identical Unconditional Guarantee.  *Id.* at 1.  Kumar, as President of Bhavika's Hospitality, signed the Unconditional Guarantee on behalf of Bhavika's Hospitality.  *Id.* at 5.

On September 16, 2009, San Fernando assigned the Note and Unconditional Guarantees to SBA.  Note at 5; Unconditional Guarantees at 5, 10.

In February 2013, Borrower defaulted on its obligations under the Note by failing to make the agreed upon payments.  Whamhof Decl. ¶ 7 & Ex. D.  On November 1, 2013, Borrower filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Eastern District of

2

United States District Court
Northern District of California

California.  ECF No. 26-1 at 23; *see also In re Bhavika's Properties, LLC*, E.D. Cal. Bankr. Case No. 1:13-BK-17136, ECF No. 1.  Plaintiff appeared in the bankruptcy proceedings on November 4, 2013.  ECF No. 6.  Plaintiff's claim is classified as an unsecured claim in the bankruptcy proceedings because Plaintiff's claims against Borrower are junior to a number of secured creditors, including CNA Properties, LLC, which has a deed of trust on the Property.  E.D. Cal. Bankr. Case No. 1:13-BK-17136, ECF No. 353.

On August 14, 2014, SBA mailed Defendants a Notice of Acceleration of Due Date of Note and Demand of Payment (the "Notice").  Whamhof Decl. Ex. C.  The Notice demanded that Defendants, as unconditional guarantors, pay the obligations in the Note in full within 15 days of the Notice.  *Id.* at 1.  The Notice also invited Defendants to inform SBA within 15 days of the Notice if it could not pay off the loan in full so that the parties could "discuss options to address the current default.  *Id.* at 2.  The demand was not sent to Borrower, for whom the bankruptcy proceedings were still pending.

At the time the instant Motion was filed, on November 2, 2016, Borrower's bankruptcy proceedings were still pending.  *Id.* ECF No. 363.  However, one week after Plaintiff filed the instant Motion, on November 9, 2016, the bankruptcy court denied confirmation of Borrower's second proposed reorganization plan and dismissed the bankruptcy case.  *Id.* ECF Nos. 554–55.

**B.  Procedural History**

On December 17, 2015, Plaintiff brought the instant suit against Defendants to enforce the Unconditional Guarantees.  ECF No. 1 ("Compl.").  On January 26, 2016, Defendants answered. ECF No. 6 ("Answer").  Defendants' answer asserted 22 affirmative defenses.  *Id.*  Pursuant to a stipulation granted by the Court on September 13, 2016, Defendants dismissed with prejudice 15 of the 22 affirmative defenses.  *See* ECF No. 22 (dismissing the following affirmative defenses: 1 – Failure to State a Cause of Action; 2 – Unclean Hands; 3 – Setoff and Recoupment; 4 – Estoppel; 5 – Bad Faith; 6 – Waiver; 7 – Assumption of Risk; 8 – Laches; 9 – Unconscionability; 10 – Intervening/Superseding Cause; 14 – Reasonableness of Payoff Demand; 15 – Infirmities in

Loan Documents; 16 – Renewal and/or modification of Loan; 18 – Failure to Make Disclosures; and 22 – Other Unknown Defense).

Thus, Defendants' Answer now only asserts the following affirmative defenses: 11 – CCP §§ 726 and 580 And Request For Fair Market Valuation; 12 – One Action Rule; 13 – Anti-Deficiency Statute; 17 – Sham Guaranty; 19 – No Excess Recoveries Allowed; 20 – Judgment Must First Be Taken Against Corporate Principal Alleged Obligor; and 21 – Pending Bankruptcy. Answer at 4–9.

On November 2, 2016, Plaintiff filed the instant Motion for Summary Judgment. ECF No. 23. On November 23, 2016, Defendants filed an opposition, ECF No. 34 ("Opp'n"),[1] and on November 28, 2016, Plaintiffs replied, ECF No. 37 ("Reply").

Plaintiff also makes three requests for judicial notice of documents related to Borrower's bankruptcy proceedings. ECF Nos. 26, 31, 37.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to

---

[1] In Plaintiff's reply, Plaintiff requests the Court to disregard Defendants' Opposition to Plaintiff's Motion for Summary Judgment because Defendants' Opposition was untimely. Under Civil Local Rule 7-3(a), an opposition "must be filed and served not more than 14 days after the motion was filed." Here, Plaintiff's Motion was filed on November 2, 2016 and although Defendant's opposition was due on November 16, 2016, Defendants' Opposition was filed on November 23, 2016. Defendants' Opposition, therefore, is untimely.

Regardless, "Ninth Circuit precedent bars district courts from granting summary judgment simply because a party fails to file an opposition or violates a local rule." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258–60 (9th Cir. 2010). Additionally, there is a strong policy in favor of "resolv[ing] disputes based on the merits." *Flores v. Emerich & Fike*, 2007 WL 4249806, at *1 (E.D. Cal. Nov. 30, 2007). Accordingly, an untimely opposition should be considered "in the absence of bad faith on the part of the party seeking relief or prejudice to the adverse party." *Ahanchian*, 624 F.3d at 1259.

Here, no bad faith has been alleged. Additionally, the Opposition was filed three weeks before the December 15, 2016 hearing date on the instant Motion. Plaintiff filed a response on November 28, 2016, but could have taken the full 7 days provided by Civil Local Rule 7-3(c). Therefore, Plaintiff will not be prejudiced by the Court's consideration of the untimely Opposition. Thus, the Court considers Defendant's Opposition.

Case No. 15-CV-05780-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  However, on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  It is not the task of the court to scour the record in search of a genuine issue of triable fact.  *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment.  *Id.*  If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

**B.      State Law in Diversity Cases**

Case No. 15-CV-05780-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1  "In determining the law of the state for purposes of diversity, a federal court is bound by

2  the decisions of the highest state court." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530

3  (9th Cir. 2011).  If the state's highest court has not decided an issue, it is the responsibility of the

4  federal courts sitting in diversity to predict "how the state high court would resolve it." *Id.*; *AirSea*

5  *Forwarders, Inc. v. Air Asia Co., Ltd.*, 880 F.2d 176, 186 (9th Cir. 1989) (internal quotation marks

6  omitted).  In the absence of clear authority, the Court looks for guidance from decisions of the

7  state appellate courts and other persuasive authorities, such as decisions from courts in other

8  jurisdictions and treatises.  *Strother v. S. Cal. Permanente Med. Grp.*, 79 F.3d 859, 865 (9th Cir.

9  1996).  "In assessing how a state's highest court would resolve a state law question[,] . . . federal

10  courts look to existing state law without predicting potential changes in that law." *Ticknor v.*

11  *Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).

12  **III.     DISCUSSION**

13       **A.     Requests for Judicial Notice**

14       The Court first addresses Defendants' unopposed requests for judicial notice.  ECF Nos.

15  26, 31, 37.  The Court may take judicial notice of matters that are either "generally known within

16  the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources

17  whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  Public records,

18  including judgments and other publicly filed documents, are proper subjects of judicial notice.

19  *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007) ("[Courts] may take notice

20  of proceedings in other courts, both within and without the federal judicial system, if those

21  proceedings have a direct relation to matters at issue."); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d

22  Cir. 2000) (taking judicial notice of a filed complaint as a public record).

23       Defendants seek judicial notice of

24       (1) the case docket for Borrower's bankruptcy proceedings in the Eastern District of

25  California, *In re Bhavika's Properties, LLC*, E.D. Cal. Case No. 1:13-BK-17136;

26       (2) Borrower's Second Amended Chapter 11 Plan entitled "Chapter 11 Plan of

27

28  Case No. 15-CV-05780-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    Reorganization Dated August 5, 2015 of Bhavika's Properties, LLC," *id.* ECF No. 353;

2           (3) Borrower's Reply to SBA's Objections to Debtor's First Amended Chapter 11 Plan of

3    Reorganization of Bhavika's Properties, LLC, *id.* ECF No. 276;

4           (4) Civil Minute Order Denying Motion for Order Confirming Chapter 11 Plan of

5    Reorganization, *id.* ECF No. 554;

6           (5) Notice of Entry of Order of Dismissal of bankruptcy case, *id.* ECF No. 556; and

7           (6) Declaration of Parthesh Kumar in support of Motion for Order Authorizing Rejection

8    of (1) Commercial Lease and (2) Management Contract with Bhavika's Hospitality and attached

9    exhibits, *id.* ECF Nos. 411 & 412.

10          The Court GRANTS this request for judicial notice, as these are documents that have been

11   filed publicly in the *In re Bhavika's Properties, LLC* matter that was previously pending before

12   the Bankruptcy Court of the Eastern District of California.  *See Chrisanthis v. United States*, 2008

13   WL 4848764, at *3 (N.D. Cal. Nov. 7, 2008), *aff'd sub nom. Chrisanthis v. Cason*, 382 F. App'x

14   567 (9th Cir. 2010) (holding that "documents publicly filed in [another case] are the proper

15   subjects of judicial notice").  However, to the extent any of the facts in these documents are

16   disputed, the Court does not take judicial notice of those facts.  *See Lee v. City of L.A.*, 250 F.3d

17   668, 689 (9th Cir. 2001) ("A court may take judicial notice of matters of public record . . . But a

18   court may not take judicial notice of a fact that is subject to reasonable dispute.") (internal

19   quotation marks omitted), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307

20   F.3d 1119 (9th Cir. 2002).

21          **B.       Liability Under the Terms of the Unconditional Guarantees**

22          As an initial matter, the terms of the Unconditional Guarantees clearly indicate that

23   Defendants are liable for the entirety of the unpaid portions of the loan.  The relevant language in

24   the Unconditional Guarantees is as follows:

25          Guarantor unconditionally guarantees payment to Lender of all amounts owing
            under the Note.  This Guarantee remains in effect until the Note is paid in full.
26          Guarantor must pay all amounts due under the Note when Lender makes written
            demand upon Guarantor.  Lender is not required to seek payment from any other

27                                                              7

28   Case No. 15-CV-05780-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

source before demanding payment from Guarantor.

Unconditional Guarantees at 1, 6.

Defendants do not dispute Borrower executed the Note, or that Defendants each executed the Unconditional Guarantees.  Additionally, Defendants do not dispute that the language of the Unconditional Guarantees provides that Defendants are fully liable for "all amounts due" under the Note.  Finally, Defendants do not dispute that Borrower defaulted on the loan and that SBA made a "written demand upon" Defendants.  Whamhof Decl. Ex. C.  Therefore, absent the applicability of one of Defendants' seven affirmative defenses, the Court must grant summary judgment in favor of Plaintiff.  *Cf. Austad v. United States*, 386 F.2d 147 (9th Cir. 1967) (affirming judgment on the pleadings against guarantors where the guarantors had waived all affirmative defenses under Arizona law).

The Court next turns to whether Defendants' affirmative defenses prevent summary judgment in the instant suit.

### C.    Affirmative Defenses

Defendants have asserted the following seven affirmative defenses: 11 – CCP §§ 726 and 580 And Request For Fair Market Valuation; 12 – One Action Rule; 13 – Anti-Deficiency Statute; 17 – Sham Guaranty; 19 – No Excess Recoveries Allowed; 20 – Judgment Must First Be Taken Against Corporate Principal Alleged Obligor; and 21 – Pending Bankruptcy.  Answer at 4–9.  The Court first discusses waiver of affirmative defenses 11, 12, 13, and 19 which involve different aspects of the so-called "antideficiency statutes."  Second, the Court discusses whether the waiver of affirmative defenses 11, 12, 13, and 19 is ineffective based on affirmative defense 17, the "Sham Guaranty" defense.  Finally, the Court addresses affirmative defenses 20 and 21, which involve the role of Borrower in this collection action.

#### 1.    Antideficiency Statutes

Affirmative defense 11, 12, 13, and 19 invoke what are collectively called the "antideficiency statutes" under California law, namely, California Civil Procedure Code sections 580a, 580b, 580c, 580d, and 726.  *CADC/RAD Venture 2011-1 LLC v. Bradley*, 235 Cal. App. 4th

8

United States District Court
Northern District of California

1  775, 783 (2015) ("California's antideficiency statutes are codified at Code of Civil Procedure

2  sections 580a through 580d and 726.").  When a loan is secured by a mortgage or deed of trust in

3  real property, these code provisions limit a lender's ability to collect from the borrower amounts

4  still owed above the value of that real property, that is, the "deficiency" still remaining on the

5  loan.[2]  A borrower may not waive these protections "because the antideficiency legislation was

6  established for a public reason and cannot be contravened by a private agreement." *Cadle Co. II v.*

7  *Harvey*, 83 Cal. App. 4th 927, 932 (2000) (citation omitted).

8          However, "the antideficiency statutes do not affect the liability a guarantor might

9  otherwise have with respect to a deficiency." *CADC/RAD*, 235 Cal. App. 4th at 783 (citing Cal.

10  Civ. Proc. Code § 580b(c) (stating that the antideficiency statutes do "not affect the liability that a

11  guarantor, pledgor, or other surety might otherwise have with respect to the deficiency")).  "Thus,

12  a lender may recover a deficiency judgment from a guarantor who waives his or her antideficiency

13  protections, even though the antideficiency statutes would bar the lender from recovering that

14  same deficiency from the primary borrower." *Id.*  Pursuant to this principle, California Civil Code

15  section 2856(a) specifies that "[a]ny guarantor or other surety, including a guarantor of a note or

16

17  [2] The antideficiency statutes provide both substantive and procedural protections.  First, California
Civil Procedure Code § 580b bans any deficiency judgment against a borrower for secured loans
18  where a "mortgage [is] given to the vendor to secure payment of the balance of the purchase price
of that real property," i.e., where the seller of the property provides a secured loan for purchase of
19  the property, or where money is loaned for all or part of the purchase of a dwelling for not more
than four families.  Cal. Civ. Proc. Code § 580b.  Section 580d prevents any deficiency judgment
20  where property is sold by nonjudicial foreclosure.  Cal. Civ. Proc. Code 580d(a).  Defendants
invoke these provisions through affirmative defense 13, "Anti-Deficiency Statute."
21          Section 580a provides the debtor a right to an assessment of a property's fair market value
22  during a nonjudicial foreclosure.  Cal. Civ. Proc. Code § 580a.  Section 726 limits deficiency
judgments in judicial foreclosures to the difference between the fair value of the property and the
23  total amount of the loan secured by the sold property.  Cal. Civ. Proc. Code § 726(b).  The debtor
can demand an assessment of the fair market value of the property in this context as well.  *Id.*
24  Defendants invoke these statutes under affirmative defense 11, "CCP §§ 726 and 580 And Request
For Fair Market Valuation," and affirmative defense 19, "No Excess Recoveries Allowed."
25          Section 726 also specifies that "[t]here can be but one form of action for the recovery of
any debt or the enforcement of any right secured by mortgage upon real property."  *Id.* § 726(a).
26  If § 726 is applied as used as an affirmative defense, "the creditor will be forced to exhaust the
security before he may obtain a money judgment against the debtor for any deficiency."  *Sec. Pac.*
27  *Nat'l Bank v. Wozab*, 51 Cal. 3d 991, 997 (1990).  Defendants invoke this statutory provision for
affirmative defense 12, "One Action Rule."

9

28  Case No. 15-CV-05780-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

other obligation secured by real property . . . may waive . . . any rights or defenses that are based

upon, directly or indirectly, the application of Section 580a, 580b, 580d, or 726 of the Code of

Civil Procedure to the principal's note or other obligation."

Section 2856(c) provides exemplar waiver language that, when placed in a contract, "shall

effectively waive all rights and defenses" related to the antideficiency statutes.  That language is

set forth below in a table alongside the language in the Unconditional Guarantees:

| Cal. Civ. Code § 2856(c) | Unconditional Guarantees |
| --- | --- |
| The guarantor waives all rights and defenses that the guarantor may have because the debtor's debt is secured by real property. This means, among other things:<br>(1) The creditor may collect from the guarantor without first foreclosing on any real or personal property collateral pledged by the debtor.<br>(2) If the creditor forecloses on any real property collateral pledged by the debtor:<br>(A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.<br>(B) The creditor may collect from the guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right the guarantor may have to collect from the debtor. This is an unconditional and irrevocable waiver of any rights and defenses the guarantor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure. | The guarantor waives all rights and defenses that the guarantor may have because the debtor's debt is secured by real property. This means, among other things:<br>(1) The creditor may collect from the guarantor without first foreclosing on any real or personal property collateral pledged by the debtor.<br>(2) If the creditor forecloses on any real property collateral pledged by the debtor:<br>(A) The amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price.<br>(B) The creditor may collect from the guarantor even if the creditor, by foreclosing on the real property collateral, has destroyed any right the guarantor may have to collect from the debtor. This is an unconditional and irrevocable waiver of any rights and defenses the guarantor may have because the debtor's debt is secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure. |
| The guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise. | The guarantor waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed the guarantor's rights of subrogation and reimbursement against the principal by the operation of Section 580d of the Code of Civil Procedure or otherwise. |

United States District Court
Northern District of California

1  As shown in the table above, the language waiving the protections of the antideficiency statutes in

2  the Unconditional Guarantees is identical to the statutory language that, by statute, "shall

3  effectively waive" the rights and defenses related to the antideficiency statutes.

4  Defendants argue that these waivers are not sufficient because they do not explicitly

5  explain the rights that are being waived.  Opp'n at 12.  Defendants rely on *Cathay Bank v. Lee*, 14

6  Cal. App. 4th 1533 (1993), which held that a waiver of rights under the antideficiency statutes was

7  invalid if there was not "an 'express' or 'explicit' waiver."  *Id.* at 1537.  However, the California

8  legislature passed § 2856 in 1995 and added explicit "safe harbor" language to the provision in

9  1996 in order to bypass the holding in *Cathay Bank*.  *See WRI Opportunity Loans II LLC v.*

10 *Cooper*, 154 Cal. App. 4th 525, 545 (2007) ("[T]he Legislature . . . manifested its intent to restore

11 the law regarding waivers to its state prior to *Cathay Bank*.").  By signing a guarantee using the

12 statute's safe harbor language word for word, Defendants have waived their right to assert the

13 defenses under the antideficiency statues.

14 The Court next turns to whether Defendant's assertion of a "sham guarantee" defense

15 prevents the anti-deficiency statute waiver from being effective.

16 ### 2.   Sham Guarantee Defense

17 Defendants argue that affirmative defense 17, "Sham Guaranty," precludes the Court from

18 finding the antideficiency protections waived.  "[T]o collect a deficiency from a guarantor [due to

19 the guarantor's waiver of the anti-deficiency statutes], he must be a true guarantor and not merely

20 the principal debtor under a different name."  *CADC/RAD*, 235 Cal. App. 4th at 784.  California

21 courts look to a number of factors to make this determination.  First, "[a] guaranty is an

22 unenforceable sham" where "the guarantor personally executes" the underlying loan agreement.

23 *See Riddle v. Lushing*, 203 Cal. App. 2d 831, 832–33 (1962) ("Since defendants were already

24 primary obligors, both jointly and severally, they could not also be . . . guarantors on the

25 partnership note."); *Valinda Builders, Inc. v. Bissner*, 230 Cal. App. 2d 106, 107 (1964) (holding

26 that a corporation formed after the guarantors had purchased the real property was a mere

27

28 Case No. 15-CV-05780-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

11

1    "instrumentality" because there was no evidence that "defendants were ever removed from their

2    status and obligations of [sic] purchasers").

3            Second, even if the guarantors are not directly obligated on the loan, the guarantee may

4    still be a sham if "the guarantor is, in reality, the principal obligor under a different name by

5    operation of trust or corporate law or some other applicable legal principle." *CADC/RAD*, 235

6    Cal. App. 4th at 783.  Whether a guarantor is a true "guarantor" is "generally a question of fact."

7    *Cal. Bank & Tr. v. Lawlor*, 222 Cal. App. 4th 625, 640 (2013) (as modified).  "[A] sham guaranty

8    defense generally will not lie where there is adequate legal separation between the borrower and

9    the guarantor, e.g., through the appropriate use of the corporate form."  *Id.*  However, "courts may

10   find a sham guaranty where a lender structures a transaction to avoid antideficiency protections,

11   even though the borrowing entity is a properly formed corporation that observes the necessary

12   formalities."  *Id.*; *Union Bank v. Brummell*, 269 Cal. App. 2d 836, 837–38 (1969) (finding

13   guarantee to be a sham where the defendants originally intended to purchase the property, but the

14   lender "advised or required them" to transfer title to the property to a preexisting corporation

15   solely owned by the defendants).

16           For example, in *River Bank America v. Diller*, 38 Cal. App. 4th 1400 (1995), the California

17   Court of Appeal found a triable issue of material fact as to whether a guarantee was a sham on a

18   motion for summary judgment where the borrower was a limited partnership, the general partner

19   of the partnership was a shell corporation, and the guarantors were the sole owners of the shell

20   corporation.  *Id.* at 1407–08.  The Court found a triable issue of material fact because (1) the

21   lender relied on extensive financial statements of the guarantors, and never inquired about the

22   financial standing of the borrower; and (2) there was evidence that the lender required the

23   borrower to be a limited partnership and insisted that one of the guarantors be removed as a

24   general partner and replaced with the shell corporation (so that the lender could pursue the true

25   borrowers as guarantors).  *Id.* at 1423.  It did not matter that the corporation had previously existed

26   because the lender had imposed specific directives that turned the actual borrowers into

27

28   Case No. 15-CV-05780-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

United States District Court
Northern District of California

12

1    guarantors.  *Id.* at 1423–24.

2         In contrast, in *Lawlor*, 222 Cal. App. 4th 625, the California Court of Appeal affirmed a

3    grant of summary judgment that found a guarantee not to be a sham.  The guarantors owned and

4    controlled the borrowers, which were a limited liability corporation and a limited partnership.  *Id.*

5    at 639.  The Court held that these liability limiting corporate and partnership structures created

6    sufficient "legal separation" between the guarantors and the borrowers even though the entities'

7    "principal purpose" was to hold the property purchased with the loan.  *Id.* ("Defendants presented

8    no evidence to show these entities were not properly formed or failed to observe the necessary

9    formalities that usually protect their owners from corporate liabilities.").  Additionally, unlike in

10   *River*, there was no evidence in *Lawlor* showing that the lender influenced the transaction in order

11   to turn the actual borrowers into guarantors.  *Id.* at 640 ("[T]he record shows Defendants formed

12   [the entities] to protect themselves from those entities' liabilities.").  Finally, although the lender

13   had obtained financial records of the guarantors, the record contained no evidence that the lender

14   did not also look to the financial status of the borrower entities when making the loan.  *Id.*

15        Here, two Unconditional Guarantees were signed, one by Kumar and Brahmbhatt and one

16   by Bhavika's Hospitality.  The Court first addresses Kumar and Brahmbhatt and then addresses

17   Bhavika's Hospitality.

18                      a.        **Kumar and Brahmbhatt**

19        Defendants argue that the Unconditional Guarantees signed by Kumar and Brahmbhatt are

20   "shams" because they are directly obligated on the Note itself, not just the Unconditional

21   Guarantees, and because they were actually the primary borrowers.  The Court addresses each

22   argument in turn.

23        Defendants first argue that Kumar and Brahmbhatt became directly obligated on the Note

24   because they signed it on Borrower's behalf.  Under California law, "[t]he interpretation of a

25   written contract is a question of law for the trial court to determine."  *Heppler v. J.M. Peters Co.*,

26   73 Cal. App. 4th 1265, 1285 (1999).  Above the signature box, the Note states that "[b]y signing

27

28   Case No. 15-CV-05780-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

     United States District Court
     Northern District of California

                                   13

below, each individual or entity becomes obligated under this Note as Borrower." Note at 5. The signature box then lists the name of Borrower, Bhavika's Properties, LLC, and below that, provides two signature lines, one for Kumar and one for Brahmbhatt. *Id.* Each signature line is preceded by the word "By:" Thus, as plainly written, Borrower executed the Note "by" Kumar's and Brahmbhatt's signatures. Additionally, Defendants admit they signed the Note on behalf of Borrower. ECF No. 25-1 at 6–7 (Request for Admission from Kumar: "Admit You signed, on behalf of Bhavika's Properties, LLC, the Note." Response: "Admit"); ECF No. 25-2 at 6–7 (same for Brahmbhatt). Thus, the Court finds that Kumar and Brahmbhatt were not bound as additional borrowers under the Note.

Second, Defendants argue that even if Kumar and Brahmbhatt were not technically obligated on the Note, the Unconditional Guarantee was a sham because Kumar and Brahmbhatt were actually the primary borrowers. Kumar has filed a declaration for the purpose of opposing summary judgment that asserts the following facts that support their argument: (1) representatives of San Fernando, the local lending agency, asked for Kumar and Brahmbhatt's financial information, but did not ask for Borrower's financial information; (2) San Fernando drafted the loan documents; (3) San Fernando "had to approve the structure of the borrower" and required that the loan be made to a "special purpose entity," that is, a holding company whose sole purpose was to own the Property; (4) Borrower was formed in 2009 for the purpose of taking title to the property; and (5) because another lender had a first lien on the Property, it was contemplated that San Fernando's security interest would be junior to the first lien. Kumar Decl. ¶ 6.

In response, Plaintiff argues that Borrower "is a properly formed, separate legal entity that has been conducting business in California for several years." Reply at 5. To support this assertion, Plaintiff asserts the following facts: (1) Borrower was formed in 2008, the year before the 2009 loan at issue here; (2) Borrower is *currently* owned 40% by Kumar, 40% by Brahmbhatt, 10% by Partesh Kumar, 5% by Mittal Kumar, and 5% by Sonal Kumar; (3) as owner of the Property, Borrower collected rent, entered various contracts, and paid taxes; and (4) Kumar and

Case No. 15-CV-05780-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Brahmbhatt did not commingle their assets with Borrower.  Reply at 5–6.

2          Under the facts presented to the Court by the parties, the Court cannot grant summary

3    judgment.  Although there is clearly "legal separation" between Kumar and Brahmbhatt on the one

4    hand and Borrower on the other, Defendants provide unrebutted evidence that creates a dispute of

5    material fact.  *See River*, 38 Cal. App. 4th at 1423 (finding a triable issue of fact as to whether the

6    guarantee was a sham even though the borrower was a distinct corporate entity).  Kumar's

7    declaration indicates that San Fernando relied on Kumar and Brahmbhatt's financial information

8    when making the loan, and did not even ask for Borrower's financial information.   Kumar Decl

9    ¶ 6; *see River*, 38 Cal. App. 4th at 1423 ("According to [a] declaration, River Bank never inquired

10   about the financial standing of [borrower].").  Similarly, Kumar's declaration indicates that San

11   Fernando required the loan to be made to a "special purpose entity," an entity solely created to

12   own the Property, and that San Fernando had approval power over the corporate structure of the

13   transaction.  Kumar Decl. ¶ 6; *see River*, 38 Cal. App. 4th at 1423 (finding a sham guarantee

14   where lender forced parties to change structure of transaction to avoid the antideficiency statute).

15   In response, Plaintiff provides essentially no evidence to explain the context of San Fernando's

16   loan transaction.  Thus, viewing the evidence in the light most favorable to the nonmoving party,

17   the Court finds that there is a triable issue of material fact as to whether the Unconditional

18   Guarantees executed by Kumar and Brahmbhatt were shams.

19         Therefore, as to Kumar and Brahmbhatt the Court DENIES Plaintiff's Motion for

20   Summary Judgment as to the affirmative defenses involving the antideficiency statutes, that is,

21   affirmative defenses 11, 12, 13, 17, and 19.

22                    **b.      Bhavika's Hospitality**

23         The Court next turns to whether a triable issue of material fact exists as to whether the

24   Unconditional Guarantee executed by Bhavika's Hospitality, the corporation that operates the

25   hotel located on the Property, is a sham.  As an initial matter, unlike with Kumar and Brahmbhatt,

26   Bhavika's Hospitality did not sign the Note, and therefore no argument can be made that it was a

27

28   Case No. 15-CV-05780-LHK
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
     JUDGMENT

1  second borrower.  *See* Opp'n at 6 (arguing that Kumar and Brahmbhatt were signatories of the

2  Note).

3          The Court next turns to whether Bhavika's Hospitality's Unconditional Guarantee is a

4  sham because Bhavika's Hospitality is, like the defendant in *River*, a borrower disguised as a

5  guarantor.  First, Bhavika's Hospitality is "a management company which rents the [Property]

6  from the [Borrower] for the sum of $17,000 per month and is responsible for all [Property]

7  operations and expenses."  ECF No. 26-3.  Although Borrower and Bhavika's Hospitality are

8  "under common ownership," the record contains no evidence that Bhavika's Hospitality is a

9  member of Borrower or that Borrower owns shares in Bhavika's Hospitality.  In fact, Bhavika's

10  Hospitality has admitted that it is a separate legal entity from Borrower and that the two

11  companies have not commingled assets.  *See* ECF No. 25-3 at 25–26 (Requested admission from

12  Bhavika's Hospitality: "Admit that You and Bhavika's Properties, LLC are separate legal

13  entities."  Response: "Admitted"), 28–29 (Requested admission from Bhavika's Hospitality:

14  "Admit that You did [sic] commingled Your assets, monies, or other funds with the assets,

15  monies, or other funds of Bhavika's Properties, LLC between January 1, 2009 and March 23,

16  2016."  Response: "Denied").  Additionally, in Borrower's bankruptcy proceedings, Borrower has

17  insisted that Bhavika's Hospitality "is a distinct and separate entity."  *See* ECF No. 26-3 at 5.

18          None of the evidence presented by Defendants contradicts the fact that Bhavika's

19  Hospitality is a separate entity from borrower.  The Kumar declaration solely states that Bhavika's

20  Hospitality "was formed in 2009 to operate Property" and "was a holding company that had no

21  assets at the time of obtaining the loan from Lender."  Kumar Decl. ¶ 6.  Unlike with Kumar and

22  Brahmbhatt, the Kumar declaration contains no statement that San Fernando relied on Bhavika's

23  Hospitality's financial information when determining that it would make the loan.  Additionally,

24  San Fernando's requirement that Defendant use a special use entity like Borrower does not create

25  a triable issue of material fact as to Bhavika's Hospitality because Defendant provides no

26  indication that San Fernando perceived Bhavika's Hospitality as the true borrower and placed it in

27

28  Case No. 15-CV-05780-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

United States District Court
Northern District of California

the position of guarantor to avoid the antideficiency statues.  *Compare River*, 38 Cal. App. 4th at 1423 (finding triable issue of material fact because the evidence indicated that the lender sought to make the actual borrower a guarantor).

Thus, because the Court finds that there is no evidence to indicate that Bhavika's Hospitality's guarantee was a sham, the Court GRANTS Plaintiff's Motion for Summary Judgment against Bhavika's Hospitality as to affirmative defenses 11, 12, 13, 17, and 19.

The Court next turns to Defendants' remaining affirmative defenses to determine whether they also would preclude summary judgment against all three Defendants.

### 3.    Affirmative Defense 20 and 21 – Pursuing Borrower and Borrower's Bankruptcy Proceedings

The Court first addresses whether Plaintiff should have pursued Borrower first and then discusses whether Borrower's bankruptcy proceedings prevent summary judgment.

Affirmative defense number 20 is "Judgment Must First Be Taken Against Corporate Principal Alleged Obligor."  Answer at 7.  Under California law, a guarantee agreement and a surety agreement are considered equivalent.  Cal. Civ. Code § 2787 ("Guaranties . . . shall be subject to all provisions of law relating to suretyships in general.").  California Civil Code § 2850 states that "the surety is entitled to have the property of the principal first applied to the discharge of the obligation."  Similarly, California Civil Code § 2849 states that "[a] surety is entitled to the benefit of every security for the performance of the principal obligation held by the creditor."  Thus, generally, a guarantor can demand a creditor to first pursue the borrower's assets or the property securing the loan before pursuing the guarantor.

However, these provisions are waivable.  *See Am. Guar. Corp. of Cal. v. Stoody*, 230 Cal. App. 2d 390, 396 (1964) ("Here the guarantor waives his right under section 2849 to the benefit of the security given by the principal obligor.  We can see no policy reason why a guarantor should not be permitted, by contract, to waive his entitlement to this benefit."); Cal. Civ. Code § 2856 ("Any guarantor or other surety . . . may waive the following: (1) The guarantor or other surety's rights of subrogation, reimbursement, indemnification, and contribution and any other rights and

17

United States District Court
Northern District of California

United States District Court
Northern District of California

1  defenses that are or may become available to the guarantor or other surety by reason of Sections

2  2787 to 2855, inclusive.").

3         Here, the Unconditional Guarantees contained the exact same language as is present in

4  California Civil Code § 2856: "Guarantor waives its rights of subrogation, reimbursement,

5  indemnification, and contribution and any other rights and defenses that are or may become

6  available to the guarantor by reason of California Civil Code Sections 2787 to 2855, inclusive."

7  Unconditional Guarantees at 4, 9.  Moreover, the first paragraph of the Unconditional Guarantee

8  explicitly states that "Guarantor must pay all amounts due under the Note when Lender makes

9  written demand upon Guarantor.  Lender is not required to seek payment from any other source

10  before demanding payment from Guarantor."  Unconditional Guarantees at 1, 6.  Additionally, as

11  part of the waiver of the antideficiency statutes, discussed above, Defendants also "waive[d] all

12  rights and defenses that the guarantor may have because the debtor's debt is secured by real

13  property," which means that "[t]he creditor may collect from the guarantor without first

14  foreclosing on any real or personal property collateral pledged by the debtor."  Unconditional

15  Guarantees at 4, 9.  Thus, Defendants have clearly waived any right provided under §§ 2849 or

16  2850 for Defendants to demand that the lender first pursue the Borrower.

17         Regardless, Defendants argue that "the obligation to perform arises only after loss or

18  nonperformance of the indemnity or suretyship obligation." *Id.*; Resp. at 4.  Defendants then

19  argue that a demand letter was never sent to Borrower, and therefore, no default or acceleration on

20  the loan ever occurred.  Resp. at 4.  While unclear, Defendants seemingly argue that no duty arose

21  under the Unconditional Guarantees because an official demand letter was never sent to Borrower.

22  However, as discussed above, Plaintiff has satisfied the exact contractual language of the

23  Unconditional Guarantees.  Unconditional Guarantees at 1, 6 ("Guarantor must pay all amounts

24  due under the Note when Lender makes written demand upon Guarantor.  Lender is not required

25  to seek payment from any other source before demanding payment from Guarantor.").  First,

26  Borrower defaulted by failing to make payments and filing a petition for bankruptcy.  *See* Note at

27

28  Case No. 15-CV-05780-LHK
   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
   JUDGMENT

18

1   2 ("Borrower is in default under this Note if Borrower does not make a payment when due under

2   this Note, or if Borrower . . . Becomes the subject of a proceeding under any bankruptcy or

3   insolvency law.").  Second, Plaintiff sent a demand letter to Defendants, thus triggering their

4   liability under the Unconditional Guarantees.  Nothing in the contractual agreement between the

5   SBA and Defendants requires more.  The two cases Defendants cite do not hold that there is an

6   additional extracontractual duty to first make a demand on Borrower, but rather reiterate the

7   defenses that the Court found can be waived above.  *Indusco Mgmt. Corp. v. Robertson*, 40 Cal.

8   App. 3d 456, 459–60 (1974) (holding that secured property must be pursued first under

9   antideficiency statutes unless the provision is waived); *Kelley v. Goldschmidt*, 47 Cal. App. 38, 42

10  (1920) (discussing the protections for a surety under § 2850).  Thus, Plaintiff did not need to first

11  demand or sue Borrower to obtain a judgment against Defendants.

12      Therefore, the Court GRANTS Plaintiff's Motion for Summary Judgment against all three

13  Defendants as to affirmative defense 20.  The Court notes that, even though the Court found a

14  triable issue of material fact as to whether Kumar and Brahmbhatt executed a sham guarantee, that

15  holding does not affect affirmative defense 20.  Sections 2849 and 2850 are specific defenses

16  provided to guarantors or sureties.  If Kumar and Brahmbhatt's guarantees are shams, which

17  would make Kumar and Brahmbhatt "primary obligors" on the Note rather than guarantors,

18  Kumar and Brahmbhatt will no longer be able to invoke these statutory provisions.

19      Affirmative defense 21 is "Pending Bankruptcy."  Borrower was in Chapter 13

20  reorganization bankruptcy proceedings when the complaint in this suit and the instant motion were

21  filed.  ECF No. 26-1.  However, on November 9, 2016, the bankruptcy court in the Eastern

22  District of California denied confirmation of Borrower's reorganization plan and dismissed the

23  bankruptcy case.  *See* ECF No. 31 (minute entry indicating case was dismissed on November 9,

24  2016).  Therefore, there is no longer a basis to raise a defense based on pending bankruptcy.  Even

25  if the bankruptcy case were still pending, it would not have an effect on this case.  Even though

26  the filing of a bankruptcy petition automatically stays all actions against the debtor, "the automatic

27

28  Case No. 15-CV-05780-LHK
    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California

19

stay does not extend to actions against parties other than the debtor, such as codebtors and sureties. . . . The Bankruptcy Code contemplates that creditors will be able to proceed against the guarantors and codebtors notwithstanding the automatic stay." *United States v. Dos Cabezas Corp.*, 995 F.2d 1486, 1491–92 (9th Cir. 1993); *see also* 11 U.S.C. § 524(e) ("[D]ischarge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.").  Thus, Defendants' affirmative defense based on Borrower's pending bankruptcy fails.

Therefore, the Court GRANTS Plaintiff's Motion for Summary Judgment against all three Defendants as to affirmative defense 21.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion for Summary Judgment as follows:

- As to Bhavika's Hospitality, the Court GRANTS Plaintiff's Motion for Summary Judgment in its entirety.
- As to Kumar, the Court GRANTS Plaintiff's Motion for Summary Judgment as to affirmative defenses 20 and 21, and DENIES Plaintiff's Motion for Summary Judgment as to affirmative defenses 11, 12, 13, 17, and 19.
- As to Brahmbhatt, the Court GRANTS Plaintiff's Motion for Summary Judgment as to affirmative defenses 20 and 21, and DENIES Plaintiff's Motion for Summary Judgment as to affirmative defenses 11, 12, 13, 17, and 19.

**IT IS SO ORDERED.**

Dated: December 20, 2016

LUCY H. KOH
United States District Judge

Case No. 15-CV-05780-LHK
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT